# In the United States Court of Federal Claims

No. 21-1501C
(Filed: July 6, 2022)

|  |  |  |
|---|---|---|
| DANIEL BADER, | ) | |
| | ) | |
| Plaintiff, | ) | Military Pay; 10 U.S.C. § 1370; Air |
| | ) | Force Board for Correction of Military |
| v. | ) | Records; AFBCMR; Money- |
| | ) | Mandating; Justiciability; Judgment on |
| THE UNITED STATES, | ) | the Administrative Record |
| | ) | |
| Defendant. | ) | |
| | ) | |

*Sean C. Timmons*, Houston, TX, for plaintiff.

*Tanya B. Koenig*, Civil Division, United States Department of Justice, Washington, DC, with whom were *Brian M. Boynton*, Acting Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Douglas K. Mickle*, Assistant Director, for defendant. *Adam E. Frey*, United States Air Force, Washington, DC of counsel.

## OPINION

**FIRESTONE,** *Senior Judge.*

Now pending before the court in this military pay case are plaintiff Col.[1] Daniel

Bader's motion for judgment on the administrative record and defendant the United

States' motion to dismiss and cross motion for judgment on the administrative record.

Col. Bader challenges the decisions of the Air Force Board for Correction of Military

Records upholding the Secretary of the Air Force's retirement of Col. Bader at the rank

of colonel, even though he had attained the higher rank of brigadier general in his final

---

[1] The court refers to the plaintiff as Col. Bader, using the rank at which he was retired.

two years with the Air Force reserves.  The decision to retire Col. Bader at the lower rank

of colonel was made following a finding of ethics violations by the Air Force Inspector

General.  For the reasons discussed below, the court **GRANTS** the government's cross

motion for judgment on the administrative record and **DENIES** Col. Bader's motion for

judgment on the administrative record.  The government's motion to dismiss is

**GRANTED IN PART** and **DENIED IN PART.**

## I.     STATUTORY AND REGULATORY BACKGROUND

Col. Bader's claims involve statutes and regulations governing federal ethics rules

for senior government officials, officer grade determinations by the Secretary of the Air

Force, and military correction boards.  These statutes and regulations are discussed

below.

### A.     Federal Ethics Rules

The statutory and regulatory ethics provisions relevant to this case are found in 18

U.S.C. § 207 and 5 C.F.R. § 2635.  Under 18 U.S.C. § 207(c)(1),

> any person who is an officer or employee . . . of the executive branch of the United
> States . . ., who is referred to in paragraph (2), and who, within 1 year after the
> termination of his or her service or employment as such officer or employee,
> knowingly makes, with the intent to influence, any communication to or
> appearance before any officer or employee of the department or agency in which
> such person served within 1 year before such termination, on behalf of any other
> person (except the United States), in connection with any matter on which such
> person seeks official action by any officer or employee of such department or
> agency, shall be punished as provided in section 216 of this title.

This one-year period, during which certain senior officials are prohibited from

communicating with or appearing before their former department or agency, is referred to

as a "cooling off" period.  *See* AR85-86, ECF No. 8.

Section 207(c)'s one-year "cooling off" period applies to, among others, anyone "employed in a position which is held by an active duty commissioned officer of the uniformed services who is serving in a grade or rank for which the pay grade (as specified in section 201 of title 37) is pay grade O-7 or above." *Id.* § 207(c)(2)(A)(iv). For the Air Force, pay grade O-7 is the rank of brigadier general. *See* 37 U.S.C. § 201(a)(1). However, the one-year cooling off period does not apply to "special Government employee[s] who serve[] less than 60 days in the 1-year period before his or her service or employment as such employee terminates." 18 U.S.C. § 207(c)(2)(B). "Special Government employee" includes officers like Col. Bader. *Id.* § 202(a); *see also* AR102; AR409; AR412. Col. Bader was thus advised that § 207(c) prohibited him from making representations back to his former agency—the Department of the Air Force and the Department of Defense—"for a period of one year following [his] last day of active duty if [he] served more than 60 days of active duty within the previous 365 days." AR88; *see also* AR405-06; AR412.

In addition to the "cooling off" requirements, every federal employee, including military officers, must under 5 C.F.R. § 2635.101(a) "place loyalty to the Constitution, laws and ethical principles above private gain." Section 2635.101(b) lays out "general principles" that "apply to every employee," including that:

(7)  Employees shall not use public office for private gain. . . .

(10)  Employees shall not engage in outside employment or activities, including seeking or negotiating for employment, that conflict with official Government duties and responsibilities. . . .

(14) Employees shall endeavor to avoid any actions creating the appearance that they are violating the law or the ethical standards set forth in this part. Whether particular circumstances create an appearance that the law or these standards have been violated shall be determined from the perspective of a reasonable person with knowledge of the relevant facts.

Section 2635.702 also prohibits an employee's use of "his public office for his own private gain" by, among other things, using "his government position or title or any authority associated with his public office in a manner that is intended to coerce or induce another person, including a subordinate, to provide any benefit . . . to himself."

## B.    Officer Grade Determinations Upon Retirement

The secretary of a military department may retire military officers "in the highest permanent grade in which such officer is determined to have served on active duty satisfactorily." 10 U.S.C. § 1370(a)(1). For officers "serving in a grade at or below the grade of major general," like Col. Bader, the "Secretary of the military department concerned" determines whether the officer served "satisfactorily" at his or her highest grade. *Id.* § 1370(a)(2). If the Secretary determines that an officer committed misconduct at a certain grade, then the Secretary "may deem the officer to have not served satisfactorily" at that grade and any higher grades, and retire the officer at a lower grade. *Id.* § 1370(a)(3); *see also* AR260 (the Secretary of the Air Force's October 7, 2015 Officer Grade Determination memorandum applying 10 U.S.C. § 1370 to Col. Bader).

As relevant to this case, the Air Force applies Officer Grade Determination actions upon retirement through Air Force Instruction 36-3203. Def.'s Resp. & Cross-Mot. at 4-5, ECF No. 13; *see also* AR257 (retiring Col. Bader "per [Air Force Instruction] 36-

4

3203"); AR265; Tr. at 7-8.  Officer Grade Determination actions are administratively

processed through the Secretary of the Air Force's Personnel Council.  *See* AR265

(explaining that Col. Bader's Officer Grade Determination was processed this way); *see*

*also* Def.'s Resp. & Cross-Mot. at 5 (citing Air Force Instruction 36-2023).  "A single

incident of misconduct can render service in a grade unsatisfactory despite a substantial

period of otherwise exemplary service."  Air Force Instruction 36-3203 ¶ 7.6.2.2 , *Service*

*Retirements* (Sept. 18, 2015).  Ultimately, the determination of satisfactory service "in a

particular grade is a matter of Secretarial discretion."  *Id.* ¶ 7.6.2.

### C.    Military Correction Boards

Members of the military can apply for a correction of their military records

through military correction boards.  *See* 10 U.S.C. § 1552.  Under this system, each

Secretary of a military department has the discretion to correct a military record "when

the Secretary considers it necessary to correct an error or remove an injustice."  *Id.* §

1552(a)(1).  Record-correction determinations are made "under procedures established by

the Secretary concerned."  *Id.* § 1552(a)(3)(A).

The Air Force Board for Correction of Military Records ("AFBCMR" or "Board")

"consists of civilians in the executive part of the Department of the Air Force who are

appointed and serve at the pleasure of the Secretary of the Air Force."  32 C.F.R. § 865.1.

Members of the Air Force applying for correction of their records have the "burden of

providing sufficient evidence of material error or injustice" before the Board.  *Id.* §

865.4(a).  The AFBCMR may rely on advisory opinions and Inspector General

investigative reports in making its decisions.  *Id.* § 865.4(a)(1); Air Force Instruction 36-

2603 ¶¶ 4.2.2-4.2.3, *Air Force Board for Correction of Military Records* (Sept. 18, 2017).

The AFBCMR may also reconsider its decisions when an applicant presents "newly

discovered relevant evidence that was not reasonably available when the application was

previously considered."  32 C.F.R. § 865.6(a).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Col. Bader's Military Service

The following facts are taken from the administrative record.  Col. Bader entered

the Air Force from the United States Air Force Academy in 1985.  AR22.  He spent 12

years as an active-duty Air Force officer, until 1997.  *Id.*  From 1997 to 2010, Col. Bader

served as a member of the Air National Guard on active duty.  *Id.*  In 2010, Col. Bader

was selected for promotion to brigadier general within the State of New York's Air

National Guard and transitioned into a "traditional reservist role" in the Air Force, where

he only occupied a part-time military status.[2]  *Id.*; *see also* AR405; Def.'s Resp. & Cross-

Mot. at 6.  During his military career, Col. Bader received multiple awards and

decorations.  AR143.

In 2010, Col. Bader was approached by a federal contractor, Gauss Management

Research and Engineering, Inc. ("GMRE"), for potential employment.  AR22.  He

received advice from an ethics counselor at the National Guard Bureau about

---

[2] According to a January 15, 2016 Air Force Legal Operations Agency memorandum signed by military defense counsel, by 2010, Col. Bader had "spent 25 years on active duty for both the United States Air Force and Air National Guard and earned a full active duty retirement. Because he was still a participating member of the Air National Guard, his military retirement was held in abeyance until he ultimately retire[d] from the Air Force."  AR79; AR22.

transitioning to civilian employment with GMRE while still serving part time with the Air Force. AR23. The National Guard Bureau advised Col. Bader of, among other requirements, 18 U.S.C. § 207(c)'s one-year "cooling off" period. *Id.*; AR85-86.

From August 12, 2010 to December 31, 2010, Col. Bader was placed on active duty orders. AR405. He therefore incurred a "cooling off" period for the next year, starting on January 1, 2011, the day following the last day of his active duty orders. *Id.* After January 1, 2011, Col. Bader expected to transition to work with GMRE, and applied for approval to work with GMRE during his "off-duty" time. *Id.* This request was approved by the Air Force, and on October 29, 2010, Col. Bader again obtained an ethics opinion addressing, among other things, the application of § 207(c) "by virtue of his continuing part time service." *Id.* The ethics opinion again explained that Col. Bader was subject to the one-year "cooling off" period, which prohibited him "from making representations to [his] former agency for a period of one year following [his] last day of active duty if [he] served more than 60 days of active duty within the previous 365 days." AR88. Col. Bader was notified that "[i]n computing whether this restriction applies to you, you must use the concept of a 'rolling year' because you are still performing active duty periodically. On the last day of any particular period of active duty, you must look back at the previous 365 days and count the number of days on which you served on active duty. If the number totals 60 or more days, then you have a one-year 'cooling-off' period from that day." *Id.*

Col. Bader began working for GMRE in 2011 while still on part time military status. AR406. Between 2011 and 2012, Col. Bader also engaged in periods of active

duty of more than 60 days, which triggered additional "cooling off" periods. *See* AR406-07.  During this time, Col. Bader worked on Air Force contracts with GMRE. *Id.*  In April 2012 he received a cautionary memorandum from the National Guard Bureau after a review of his financial disclosure report, which disclosed his status as a consultant with GMRE.  AR407.  The memorandum advised him of potential ethical conflicts of interest between his military and civilian positions. *Id.*

Changes in Air Force management triggered Col. Bader's military retirement in 2012.  AR23.  Col. Bader applied for a retirement date as of September 1, 2012. *Id.* However, on August 29, 2012, Col. Bader was notified of an Inspector General investigation into the ethics of his actions while working on Air Force contracts with GMRE, and his retirement orders at the rank of brigadier general (O-7) were rescinded. AR4.

### B.    The Air Force Inspector General's Investigation of Col. Bader

The Air Force became aware of allegations that Col. Bader "violated post-government employment and ethics restrictions" through his work with GMRE in 2011 and 2012, AR92, and launched an investigation through the Air Force Office of the Inspector General, AR90-130 (excerpts of the Inspector General report).  The Inspector General investigated two allegations:  (1) whether Col. Bader violated the "cooling off" rules of 18 U.S.C. § 207(c), and (2) whether Col. Bader used his public office for private gain in violation of 5 C.F.R. § 2635.  AR92.

Following a period of investigation, during which Col. Bader and 14 other witnesses were interviewed, AR92, an April 2014 Inspector General report found both of

these allegations "substantiated," AR129-30.  On the first allegation, the report found that

Col. Bader "violated the one-year 'cooling off' period by engaging in actions on behalf of

GMRE, his employer, with the [Air National Guard/Air Force Reserve Command Test

Center, where Col. Bader previously served] in 2011 and with the [National Guard

Bureau] in 2012."  AR129.  More specifically, the report found that Col. Bader "directly

engaged with the [Air National Guard/Air Force Reserve Command Test Center]

leadership regarding a contract on behalf of GMRE which resulted in an award."  *Id.*  The

report determined that Col. Bader communicated with the Air Force regarding Air Force

contracts on "at least two occasions via email" during his 2011 "cooling-off" period,

"with the intent to influence" Air Force leadership "into awarding business to GMRE."

AR117.  In addition, the report concluded that Col. Bader "represented GMRE on a

number of occasions to the [Air National Guard/Air Force Reserve Command Test

Center] and the [National Guard Bureau]" in 2012, during a later "cooling off" period.

AR129.

On the second allegation, the Inspector General report found that Col. Bader's

"actions while serving as an [Air National Guard] general officer and as an employee of

[GMRE]" constituted a use of "his public office for private gain."  *Id.*  The report

determined that Col. Bader "used and benefitted from the authority derived from his rank

and position, and the 'blurring' of his military and civilian statuses gave rise to the

appearance of conflict."  *Id.*  The report concluded that "[t]he appearance of impropriety

was substantial" and that Col. Bader "did not avoid participating in activities which

reasonably created the appearance that he was violating his public trust."  AR129-30.

This, "at a minimum, created the appearance that he violated the ethical standards related to his public service as an [Air National Guard] general officer." AR128.

As a result of this investigation, the Air Force Vice Chief of Staff issued Col. Bader a Letter of Reprimand that Col. Bader received on July 24, 2014. AR132-35. Col. Bader responded to the letter on July 31, 2014. AR136. In his response, he accepted responsibility for his actions and the conclusions of the Inspector General report, stating,

> While I do not agree with all of the [Inspector General] investigation findings or conclusions, I accept responsibility for my actions and consequences. I truly believed that I was always in compliance with the "Cooling Off" period rules. I had no intention of taking actions deemed wrongful or to use a public office for private gain. Still, I understand how the [Inspector General] might conclude otherwise and accept their conclusions.

*Id.* The Air Force Vice Chief of Staff sustained the reprimand on August 29, 2014. AR135.

On November 4, 2014, the Secretary of the Air Force's Office of General Counsel initiated a federal contractor debarment action against Col. Bader based on the Inspector General report. AR137-41. Col. Bader responded to the debarment action through counsel on January 9, 2015, arguing that he inadvertently violated the post-government employment ethics restrictions because of mistaken calculations of his "cooling off" period but did not use his public office for private gain. AR142. After considering Col. Bader's response, the Air Force General Counsel's Office concluded that "the administrative record establishes violations of post-government employment regulations, which would enable [the General Counsel's Office] to continue with a debarment action." AR178. However, due to Col. Bader's acceptance of responsibility for his actions and

10

his failure to understand the "cooling off" requirements, the General Counsel's Office determined that his "continued ineligibility for government contracting is not necessary at this time."  *Id.*

### C.    Col. Bader's Officer Grade Determination

Based on the substantiated Inspector General report, the Director of the Air National Guard initiated a discretionary Officer Grade Determination for Col. Bader on September 25, 2014, "pursuant to 10 U.S.C. § 1370 and Air Force Instruction 36-3203." AR265.  Col. Bader submitted a letter to the Air National Guard Director pleading against the action.  AR177.  The matter was considered by a panel within the Air Force Personnel Council, which made a recommendation to the Secretary of the Air Force. AR265-66.  On October 7, 2015, the Secretary of the Air Force, after reviewing Col. Bader's "entire military record of service, including the misconduct substantiated by an April 2014 Air Force Inspector General investigation," found that Col. Bader should be retired under 10 U.S.C. § 1370 in the lower grade of colonel.  AR396.  A memorandum for the Acting Under Secretary of Defense concurred with the Secretary of the Air Force's decision on December 2, 2015.  AR261; AR397.  Col. Bader was notified of the decision on February 11, 2016.  AR179.

### D.    Col. Bader's Initial Petition to the AFBCMR

On June 20, 2016, Col. Bader through counsel applied to the AFBCMR for correction of his records.  AR18-19.  He specifically requested that (1) "the [Inspector General] Report Findings be overturned as to the substantiated allegation that he used his public office for private gain"; (2) "that his retirement grade be restored and approved in

11

the rank and grade of Brigadier General/O-7"; (3) "retirement pay and benefits be

directed and paid"; and (4) "removal or modification of his military records to comport

with the Board's findings in [t]he interest of equity and justice." AR18. Col. Bader

argued that although he "has accepted responsibility for honestly but mistakenly

misinterpreting the one year cooling off period," AR34, the Inspector General report

incorrectly substantiated the allegation that he used his public office for private gain,

AR28. Col. Bader further contended it was "clear and unmistakable error of both the

Inspector General and the Officer Grade Determination Board to not consult with or

consider the [Air Force General Counsel's Office] opinion terminating debarment

proceedings" against him. AR26. He also submitted before the AFBCMR supporting

exhibits such as his performance reports, decorations, and letters of support. AR48-69;

AR183-191.

The AFBCMR sought advisory opinions from the National Guard Bureau (where

Col. Bader previously served) and the Air Force Personnel Council (which processed the

Officer Grade Determination). *See* AR5. The National Guard Bureau opined that Col.

Bader's application to the AFBCMR should be denied because his retirement rank was

based on a substantiated Inspector General investigation. AR264; AR5. Similarly, the

Personnel Council advised that Col. Bader's application should be denied because there

was no evidence that the Officer Grade Determination was erroneous and because the

Secretary of the Air Force has wide discretion in making officer grade determinations.

AR266-67; AR5.

Col. Bader responded to these advisory opinions on February 7, 2017. AR269-72. He argued that the advisory opinions incorrectly relied on the Inspector General report because "no evidence was raised to show an abuse of office" by Col. Bader. AR270. Instead, Col. Bader argued that the Inspector General report only "stands to substantiate [his] honest and reasonable mistake as to calculating the rolling year cooling off period." *Id.* Col. Bader argued that the AFBCMR, which "sits in equity," should conclude, as the Air Force General Counsel's Office did for his debarment action, that the issue was a "misunderstanding of the rolling year cooling off period," which "does not warrant an [Officer Grade Determination] grade reduction." *Id.* He also alleged that the advisory opinions failed to address certain criteria used to reach an Officer Grade Determination: (1) the nature and length of the officer's substantiated improper conduct; (2) the impact the substantiated conduct had on military effectiveness; (3) the quality and length of the officer's service in each grade at issue; (4) past cases involving similar conduct; and (5) the recommendations of the officer's command chain. *Id.* (citing Air Force Instruction 36-3203 ¶ 7.6.2.2 (Sept. 18, 2015)); *see also* AR265 (advisory opinion of the Air Force Personnel Council listing these five factors). Col. Bader contended that these factors weighed in his favor. AR271.

A panel of the AFBCMR met on September 26, 2017, and concluded that no error or injustice existed in Col. Bader's case that would warrant the requested relief. AR7. After reviewing the record, Col. Bader's arguments, and the advisory opinions, the Board "agree[d] with the opinion and recommendation of [the advisory opinions], and adopt[ed]

their rationale as the basis for [the Board's] conclusion [that] the applicant has not been the victim of an error or injustice."  AR6.

### E.    Col. Bader's Application for AFBCMR Reconsideration

On September 5, 2019, Col. Bader through counsel filed an application for reconsideration of the AFBCMR's September 26, 2017 denial.  AR274-97.  The application included an advisory opinion by Don Fox, a former government ethics attorney, and other exhibits and character letters.  AR299-363.  The application also included a statement from former-Lieutenant Kimberly Russo, who had been interviewed during the Inspector General investigation and who explained that her previous statements to the Inspector General regarding Col. Bader's conduct while working with GMRE "may have been misinterpreted."  AR304.

Col. Bader's reconsideration application argued that the Board committed errors when it did not seek an advisory opinion from the Air Force General Counsel's Office, relied on the advisory opinions which did not analyze the Inspector General report, and failed to consider all of the evidence submitted by Col. Bader.  AR294-95.  Col. Bader reiterated that while he misunderstood the one-year cooling off-period, he—contrary to the substantiated finding of the Inspector General report—never abused his public position for private gain.  AR296.

In response to the reconsideration application, the AFBCMR sought an advisory opinion from the Secretary of the Air Force's Office of General Counsel.  AR404-14. After reviewing Col. Bader's arguments before the AFBCMR and the Inspector General report, the advisory opinion concluded that Col. Bader had committed an ethics violation

and that his reduction in grade was permissible and within the discretionary range of consequences. *Id.* Col. Bader disagreed with this advisory opinion and argued that the opinion misinterpreted or ignored the evidence presented in his reconsideration application. AR376-79.

Between July 28 and September 28, 2020, a panel of the AFBCMR convened to consider Col. Bader's reconsideration application. AR11. After reviewing Col. Bader's arguments and exhibits, the new advisory opinion, and Col. Bader's response to the advisory opinion, the panel concurred with the Office of General Counsel and found that "no new evidence presented rose to the level warranting this Board to overturn a thorough and valid [Inspector General] investigation, nor the decisions from senior Department of Defense and Air Force officials regarding the applicant's letter of reprimand and subsequent officer grade determination." *Id.* The AFBCMR concluded that "the evidence did not demonstrate material error or injustice." *Id.*

## F.   The Instant Case

On June 23, 2021, Col. Bader through counsel filed a complaint in this court, and then filed an amended complaint on August 9, 2021. Compl., ECF No. 1; Am. Compl., ECF No. 5. The amended complaint challenges the AFBCMR's decisions upholding the retirement of Col. Bader at the rank of colonel rather than brigadier general. Am. Compl. ¶ 1. The amended complaint lists the following statutes as the bases for Col. Bader's claim: the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*; the Tucker Act, 28 U.S.C. § 1491; the Due Process Clause of the Fifth Amendment; 10 U.S.C. § 1552 (governing military correction boards); 10 U.S.C. § 1558 (governing military

"special boards" and "selection boards"); and 37 U.S.C. §§ 201-12 (governing military members' entitlement to basic pay).  Am. Compl. ¶¶ 2-3.  The amended complaint further describes Col. Bader's cause of action as arising under the APA.  Am. Compl. ¶¶ 56-62.

Col. Bader alleges that the Board's denial of his application for correction of his military records was arbitrary and capricious, was contrary to the Due Process Clause of the Fifth Amendment, and was in excess of statutory jurisdiction, authority, or limitations.  Am. Compl. ¶ 60.  Col. Bader further alleges that the Board failed to provide him with an adequate explanation, which "renders the decision arbitrary and capricious." *Id.* ¶ 61.  He seeks "declaratory relief in the form of a military retirement in the grade of O-7," "removal of the general officer memorandum of reprimand" from his records, and "at least $20,647" in wrongfully denied retirement pay.  *Id.*, Prayer for Relief ¶¶ A-C.

The government filed the administrative record on August 23, 2021, and on September 22, 2021, Col. Bader filed a motion for judgment on the administrative record, ECF No. 9.  He contends that the AFBCMR "rubber stamped" the advisory opinions when it denied his applications, rendering those decisions arbitrary and capricious.  *Id.* at 13; *see also id.* at 16.  As he did before the Board, Col. Bader challenges the underlying findings in the Inspector General report and the Board's reliance on the report.  *Id.* at 13-14.  He contends that the AFBCMR "wholly ignored" certain arguments and evidence he submitted.  *Id.* at 14.  Finally, Col. Bader argues that he has a "liberty interest in his retirement [grade]," *id.* at 9, and contends that the AFBCMR violated his due process rights by presuming him guilty of ethics violations and "depriv[ing] him of a meaningful opportunity to see[k] redress," *id.* at 15.

16

The government filed its response to Col. Bader's motion, combined with a motion to dismiss and a cross motion for judgment on the administrative record, on November 5, 2021.  The government contends that Col. Bader's amended complaint should be dismissed under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") for lack of subject matter jurisdiction because Col. Bader does not plead any money-mandating statute applicable to his claims.  Def.'s Resp. & Cross-Mot. at 16-19.  The government does, however, explain in a footnote that Col. Bader may have brought his claims under the money-mandating military retirement pay statutes.  *Id.* at 18 n.6.  The government next argues that Col. Bader's challenge to his Officer Grade Determination is non-justiciable and must be dismissed under RCFC 12(b)(6) because it is a decision committed to the discretion of the Secretary of the Air Force.  Def.'s Resp. & Cross-Mot. at 19-21.  Finally, the government argues that even if the court were to construe the amended complaint as alleging a justiciable claim over which it has jurisdiction, judgment on the administrative record should be granted in favor of the government because the AFBCMR's decisions were rational and supported by substantial evidence, and Col. Bader was not deprived of his due process rights.  *Id.* at 21-27.

On December 1, 2021, Col. Bader filed his response and reply.  He argues that 10 U.S.C. § 8929, which entitles members of the Air Force to retirement pay, is a money-mandating statute sufficient to confer jurisdiction.  Pl.'s Resp. & Reply at 4, ECF No. 14. Col. Bader asserts that his claims are justiciable because the court can "direct appropriate relief in the form of a remand to the AFBCMR."  *Id.*  Finally, he argues that the decision of the Board is not entitled to the "Chevron-type deference" of the "arbitrary and

capricious" standard of review that this court applies to military correction board decisions.  *Id.* at 4-5.  Col. Bader contends that the AFBCMR "committed an injustice by not correcting his record" because he only committed a "technical violation of the applicable ethical rules" and his retirement at a lower grade "did not fit his 'crime.'"  *Id.* at 5.

On December 22, 2021, the government filed its reply, arguing that Col. Bader's "allegations of injustice . . . provide no basis for judicial relief."  Def.'s Reply at 3, ECF No. 15.  The government reiterates that Col. Bader's claims are not justiciable, and that the Board's decision was supported by substantial evidence in the administrative record. *Id.* at 4-7.

On February 16, 2022, this case was transferred to the undersigned judge.  Order, ECF No. 16.  Oral argument was held on June 16, 2022.

## III.    DISCUSSION

The court first addresses the arguments made in support of the government's motion to dismiss and then turns to the parties' cross motions for judgment on the administrative record.

### A.    Col. Bader Fails to Identify a Money-Mandating Statute Applicable to His Claims in His Amended Complaint

The government first argues that Col. Bader fails to identify a money-mandating statute in his amended complaint that is applicable to his claims for retirement pay. Def.'s Resp. & Cross-Mot. at 16-19.  The court agrees.

"The Tucker Act authorizes certain actions for monetary relief against the United States to be brought in the Court of Federal Claims." *Martinez v. United States*, 333 F.3d 1295, 1302 (Fed. Cir. 2003) (en banc).  Although the Tucker Act serves as a waiver of sovereign immunity and a jurisdictional grant, it does not create a substantive cause of action. *Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.*, 525 F.3d 1299, 1306 (Fed. Cir. 2008).  Rather, a plaintiff must establish that "a separate source of substantive law . . . creates the right to money damages." *Id.* (quotation omitted).  "[A] statute or regulation is money-mandating for jurisdictional purposes if it 'can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties [it] impose[s].'" *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983)).

As noted above, Col. Bader's amended complaint cites as the bases for his claim the APA, the Fifth Amendment Due Process Clause, 10 U.S.C. § 1552 (governing correction of military records), 10 U.S.C. § 1558 (governing military "special boards" and "selection boards"), and 37 U.S.C. §§ 201-212 (governing service members' entitlement to basic pay).  Am. Compl. ¶¶ 2-3.  However, these sources of law either do not provide this court with jurisdiction, or are not applicable to Col. Bader's claim for retirement pay.

### 1.    Some of the sources of law identified by Col. Bader in his amended complaint are not money-mandating and therefore do not provide this court with jurisdiction.

Some of the statutes and constitutional provisions Col. Bader cites in his amended complaint are not money-mandating and cannot provide this court with jurisdiction.  It is

well-settled that the APA is not money-mandating.  *See, e.g.*, *Wopsock v. Natchees*, 454 F.3d 1327, 1333 (Fed. Cir. 2006) ("[T]he APA does not authorize an award of money damages at all . . . .").  The Fifth Amendment Due Process Clause is also not a money-mandating source of law.  *See, e.g.*, *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (holding that "the Due Process Clause[] of the Fifth . . . Amendment" is not "a sufficient basis for jurisdiction" under the Tucker Act because the Due Process Clause does "not mandate payment of money by the government").  The Federal Circuit has concluded that 10 U.S.C. § 1552 is not a money-mandating statute providing a separate and distinct cause of action under the Tucker Act.  *Martinez*, 333 F.3d at 1315.  Likewise, 10 U.S.C. § 1558, which governs review of certain actions regarding military "special boards," only provides for equitable relief and cannot serve as the money-mandating basis for this court's jurisdiction.[3]  *See Baude v. United States*, 137 Fed. Cl. 441, 448-49 (2018) (holding that § 1558 is not money-mandating but may provide equitable relief ancillary to a money damages claim based on a separate money-mandating statute)*, vacated and rev'd on other grounds*, 955 F.3d 1290 (Fed. Cir. 2020). Therefore, to the extent Col. Bader relies on these statutes, the government's motion to dismiss for lack of subject matter jurisdiction is granted.

---

[3]  The Federal Circuit has not specifically addressed whether 10 U.S.C. § 1558 is money-mandating.  However, Col. Bader in his briefs does not rely on § 1558 as a money-mandating source of law or explain how this provision is applicable to this case, and for this additional reason the court holds that § 1558 cannot serve as the statutory basis for his claim.

2.      **Some of the statutes identified by Col. Bader in his amended complaint are money-mandating but are not applicable to his claim.**

Col. Bader also cites in his amended complaint 37 U.S.C. §§ 201-12, Am. Compl. ¶ 3, but does not, in his briefing before this court, mention these provisions or explain how they are applicable to his claim.  While some of these provisions are money-mandating, Col. Bader cannot under RCFC 12(b)(6) state a claim for relief under them because they are not applicable to his claim for retirement pay.

Sections 202 to 212 of title 37 govern military members' entitlement to basic pay. In particular, § 204 provides that members of the military on active duty or certain other full-time duty "are entitled to the basic pay of the pay grade to which assigned."  The Federal Circuit has held that § 204 is a money-mandating statute that confers jurisdiction on this court.  *Martinez*, 333 F.3d at 1315.  However, Col. Bader makes no claim for basic pay in his complaint.  Instead, his claim is limited to an adjustment of his retirement pay.  Therefore, while § 204 is money-mandating, it does not provide for the relief requested by Col. Bader.  Col. Bader thus fails to state a claim upon which relief can be granted under 37 U.S.C. § 204.  *See Ancman v. United States*, 77 Fed. Cl. 368, 375 (2007).  In addition, as the government notes, 37 U.S.C. § 202 concerns retirement pay, but only applies to certain United States Coast Guard ranks.  Def.'s Resp. & Cross-Mot. at 17-18.  Even if the court were to hold § 202 money-mandating, Col. Bader as a retired member of the Air Force could not state a claim upon which relief could be granted under this provision.  Therefore, to the extent that Col. Bader relies on § 202 and § 204, the

government's motion to dismiss is granted for failure to state a claim under RCFC 12(b)(6).

In sum, none of the sources of law cited in Col. Bader's amended complaint provide a basis on which his claim for retirement pay could proceed in this court.

**B.    Section 1370 of Title 10 Provides This Court with Jurisdiction Over Col. Bader's Claim, and His Requested Relief Falls Within the Scope of This Statute**

Nevertheless, all parties agree that 10 U.S.C. § 1370 is a money-mandating statute applicable to Col. Bader's claim that supplies this court with jurisdiction under the Tucker Act.[4]  Tr. at 9, 18-19.  As explained above, § 1370(a)(1) requires that an officer "be retired in the highest permanent grade in which such officer is determined to have served on active duty satisfactorily."  In cases where, as here, a military member alleges that he or she was retired at the wrong grade, this court has held that 10 U.S.C. § 1370 is a money-mandating statute that provides this court with jurisdiction over such claims. *See, e.g.*, *Waters v. United* States, 139 Fed. Cl. 9, 18 (2018) (finding § 1370 as a basis for jurisdiction, and citing cases); *Emoto v. United States*, No. 17-228C, 2017 WL 5167383,

---

[4] The government at oral argument asserted that Col. Bader did not in his briefs or the amended complaint contend that § 1370 provides this court with jurisdiction, suggesting that this argument is now waived.  *See* Tr. at 8.  However, Col. Bader does mention § 1370 in his motion for judgment on the administrative record.  Pl.'s Mot. at 13.  In addition, the allegations in Col. Bader's complaint could be read as asserting a claim under § 1370.  *See* Am. Compl. ¶¶ 1, 60. As the court agrees with the parties that § 1370 provides the court with jurisdiction, the court will not dismiss Col. Bader's claim because he failed to specifically cite this statute in his amended complaint.  *See Nicely v. United States*, 23 F.4th 1364, 1367 (Fed. Cir. 2022) ("[W]e must look to the substance of the allegations in a complaint when assessing" jurisdiction, "not the label a claimant places on them."); *Ancman*, 77 Fed. Cl. at 375 (addressing money-mandating bases for claims not cited in the complaint); *Waters v. United States*, 139 Fed. Cl. 9, 18 (2018) (finding jurisdiction under § 1370 even though the plaintiff made a claim under § 204).

at *10 (Fed. Cl. Nov. 8, 2017) (finding § 1370 money-mandating).  Thus, as the

government recognizes, Col. Bader's claim can proceed under this money-mandating

"retirement pay statute[]."  Def.'s Resp. & Cross-Mot. at 18 n.6 (citing *Lewis v. United*

*States*, 458 F.3d 1372, 1376 n.2 (Fed. Cir. 2006)).  Accordingly, the court has Tucker Act

jurisdiction[5] over Col. Bader's claim.  In addition, Col. Bader's claim falls within the

scope of this statute.

### C.    Col. Bader's Challenge to the AFBCMR Decisions Is Justiciable

The government next argues that even if the court possesses jurisdiction, the

decision to reduce Col. Bader's rank was committed to the Air Force's discretion and,

therefore, Col. Bader's challenge to that decision is not justiciable.  Def.'s Resp. &

Cross-Mot. at 19-21.  The question of justiciability is distinct from the question of

jurisdiction.  *Voge v. United* States, 844 F.2d 776, 779-80 (Fed. Cir. 1988) (holding that

the military's exercise of discretion is nonjusticiable, even if the court has Tucker Act

jurisdiction).  "A controversy is justiciable only if it is one which the courts can finally

and effectively decide, under tests and standards which they can soundly administer

within their special field of competence."  *Id.* at 780 (internal quotations omitted).  In

other words, the court must ensure that it is competent to hear Col. Bader's challenge.

---

[5] Although not challenged by the government, the court also finds that Col. Bader's claim is
timely because his complaint was filed within six years of the Secretary of the Air Force's
October 7, 2015 decision retiring him under 10 U.S.C. § 1370 at the rank of colonel.  *See* 28
U.S.C. § 2501; AR396; Tr. at 6-7, 18.

"Justiciability is a particularly apt inquiry when one seeks review of military activities," *Murphy v. United States*, 993 F.2d 871, 872 (Fed. Cir. 1993); *see also Roth v. United States*, 378 F.3d 1371, 1385 (Fed. Cir. 2004), because "judges are not given the task of running the" military, *Orloff v. Willoughby*, 345 U.S. 83, 93-94 (1953).  Typically, "the merits of a service secretary's decision regarding military affairs are unquestionably beyond the competence of the judiciary to review." *Adkins v. United States*, 68 F.3d 1317, 1322 (Fed. Cir. 1995).  The Federal Circuit has thus recognized that there are "thousands of . . . routine personnel decisions regularly made by the services which are variously held nonjusticiable or beyond the competence . . . of courts to wrestle with," *Voge*, 844 F.2d at 780, including promotion decisions, *id.* at 782; *Adkins*, 68 F.3d at 1324.

However, while the "merits of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular *procedure* followed in rendering a military decision may present a justiciable controversy." *Adkins*, 68 F.3d at 1323 (emphasis in original).  Even in areas within its discretion, the military is "bound to follow its own procedural regulations if it chooses to implement some," *Murphy*, 993 F.2d at 873, because "those procedures by their nature limit the military's discretion," *Fisher v. United States*, 402 F.3d 1167, 1177 (Fed. Cir. 2005).

Applying these standards to this case, under 10 U.S.C. § 1370, the determination of satisfactory service of an officer for purposes of an officer grade determination falls within the discretion of, as relevant here, the Secretary of the Air Force. *See also* Air Force Regulation 36-3203 ¶ 7.6.2, *Service Retirements* (Sept. 18, 2015) (stating that the

24

officer grade determination is "wholly" within the Secretary's discretion); *see also Kim v. United States*, No. 03-1562C, 2006 WL 5629222, at \*6 (Fed. Cl. June 16, 2006) ("It is clear that the Secretary has the authority to make such retirement determinations based upon whether a member's service was satisfactory at a given grade.").  Therefore, to the extent Col. Bader asks this court to re-evaluate the merits of his Officer Grade Determination, that claim is not justiciable, and the government's motion to dismiss under RCFC 12(b)(6) is granted.[6]

However, Col. Bader's amended complaint seeks review of the AFBCMR's decisions upholding his Officer Grade Determination, Am. Compl. ¶ 1, alleging that the Board failed to adequately explain its decisions or provide the necessary due process, *id.* ¶¶ 60-61.  The court frequently reviews such challenges to military correction board decisions under an "arbitrary and capricious" standard of review.  *See* Tr. at 12-13; *see also Adkins*, 68 F.3d at 1325 (holding that the "procedural aspects of a military record correction decision [are subject] to judicial scrutiny"); *Lewis*, 458 F.3d at 1376 (noting correction board decisions are subject to judicial review); *Woodward v. United States*, 871 F.2d 1068, 1073 (Fed. Cir. 1989) (noting that "the Claims Court was correct in holding that it had jurisdiction in a claim for money damages to consider [an] allegation of violations of constitutional rights"); *Miller v. United States*, 119 Fed. Cl. 717, 731 (2015) ("[O]nce a service-member has had recourse to a corrections board, the focus is

---

[6] Col. Bader also does not identify in his briefs before this court a specific procedural violation committed by the Secretary in making the challenged Officer Grade Determination.

both on the procedural infirmity alleged before the board, as well as on a review of the board's decision under the arbitrary and capricious standard."); *Quinton v. United States*, 64 Fed. Cl. 118, 124 (2005) (holding that the issue of whether the decision of a military correction board was arbitrary or capricious was the type of decision "the court frequently reviews"). Therefore, as to Col. Bader's challenges to the decisions of the AFBCMR as inadequately supported or as violating his due process rights, the government's motion to dismiss Col. Bader's claim on justiciability grounds is denied. The court proceeds to evaluate the parties' cross motions for judgment on the administrative record as to these challenges.

### D. Col. Bader Has Not Demonstrated that the AFBCMR's Decisions Were Arbitrary, Capricious, Unsupported by Substantial Evidence, or Contrary to Law

The Court of Federal Claims reviews decisions of military correction boards based on the administrative record. *See, e.g.*, *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009). Parties may move for judgment on the administrative record pursuant to RCFC 52.1. In deciding a motion pursuant to RCFC 52.1, the court makes "factual findings from the record evidence as if it were conducting a trial on the record." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1357 (Fed. Cir. 2005). Unlike a summary judgment proceeding, genuine issues of material fact will not foreclose judgment on the administrative record. *See id.* at 1356.

The court reviews the administrative record to determine whether a board's decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law. *See Chappell v. Wallace*, 462 U.S. 296, 303 (1983) (noting that a decision of the Board

for Correction of Naval Records is "subject to judicial review" and may be set aside if it

is "arbitrary, capricious or not based on substantial evidence"); *Barnick v. United States*,

591 F.3d 1372, 1377 (Fed. Cir. 2010).  The scope of this judicial review is a deferential

one.  *See Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983).  The arbitrary

and capricious standard of review "does not require a reweighing of the evidence, but a

determination whether the conclusion being reviewed is supported by substantial

evidence." *Id.* at 1157 (emphasis removed).  In determining whether a conclusion is

supported by substantial evidence, "all of the competent evidence must be considered . . .

whether or not it supports the challenged conclusion."  *Id.* (emphasis removed).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Strand v. United States*, 951 F.3d 1347, 1351 (Fed.

Cir. 2020) (internal quotation omitted).  The court may not "substitute [its] judgment for

that of the military departments when reasonable minds could reach differing conclusions

on the same evidence."  *Heisig*, 719 F.2d at 1156 (footnote omitted).

 The plaintiff bears the burden of showing by "cogent and clearly convincing

evidence" in the record that a board's decision is arbitrary, capricious, contrary to law, or

unsupported by substantial evidence. *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir.

1986).  "[M]ilitary administrators are presumed to act lawfully and in good faith like

other public officers, and the military is entitled to substantial deference in the

governance of its affairs."  *Dodson v. U.S. Gov't, Dep't of Army*, 988 F.2d 1199, 1204

(Fed. Cir. 1993); *see also Richey v. United States*, 322 F.3d 1317, 1326 (Fed. Cir. 2003)

(noting "the presumption of regularity that attaches to all administrative decisions").

Col. Bader's challenge to the Board's decisions in this case centers on his assertion that, contrary to the Inspector General's findings, he did not use his public office for private gain, and that, therefore, the decision to retire him at a lower grade was disproportionate to his actual misconduct.  At oral argument, Col. Bader's counsel focused on his contentions that the AFBCMR inadequately supported its decisions given contrary evidence in the record.  *See* Tr. at 19-21.  The court addresses this argument first, and then turns to the remaining arguments raised in the briefs.

### 1.    The AFBCMR did not ignore countervailing evidence.

In briefing and at oral argument, Col. Bader contends that the AFBCMR improperly failed to consider the evidence he submitted to show that he never used his public office for private gain in violation of 5 C.F.R. § 2635 and that the decision to reduce his rank was unjust.  Tr. at 17-19, 21-22; Pl.'s Mot. at 12-14.  Specifically, Col. Bader argues that in upholding the Secretary's Officer Grade Determination, the Board (1) "ignored the fact that [he] never explicitly or implicitly attempted to coerce another to act in a certain manner by means of his rank or position," (2) "ignored the fact that all of [his] communications to military officials [during his time with GMRE] were made using his work email and that he attended meetings in civilian attire," and (3) "ignored the fact that [he] sought multiple ethics opinions to ensure he was not violating any law or rule." Pl.'s Mot. at 14; *see also* Tr. at 20 (arguing that the Board "cherry-picked the information that they wanted to rely on"), 21 (noting that Col. Bader sought ethics opinions).

At oral argument, counsel for Col. Bader also focused on a letter by former-Lt. Kimberly Russo that Col. Bader submitted with his AFBCMR reconsideration

application.  Tr. at 19-20.  Lt. Russo (now a civilian), AR411, was a witness in the
Inspector General investigation.  The Inspector General report relied in part, on Lt.
Russo's statements to conclude that Col. Bader's actions violated the "cooling off" rules
and 5 C.F.R. § 2635.  AR112-13, 116, 121-24, 128.  Specifically, Lt. Russo stated that
Col. Bader directed her to send emails he had drafted on behalf of GMRE using her own
signature line.  *Id.*; *see also* AR410-11.  Lt. Russo also stated that Col. Bader's rank
influenced her actions with regard to her work with GMRE contracts.  AR123-24.  In her
letter submitted with Col. Bader's reconsideration application, Lt. Russo stated that,
while she stood by her statements, the Inspector General may have "misinterpreted" her
testimony regarding Col. Bader's conduct.  AR304.

Counsel for Col. Bader at oral argument also referenced a memorandum by Don
Fox that Col. Bader submitted with his reconsideration application before the Board.  Tr.
at 20.  Mr. Fox is a former Acting Director and General Counsel at the United States
Office of Government Ethics and a former Air Force Deputy General Counsel.  AR299.
Mr. Fox opined that "the decision to reduce Colonel Bader in grade was grossly
disproportionate to any recommendation I would have made in a similar case."  AR300.

After carefully reviewing the record and the parties' arguments, the court
disagrees with Col. Bader's contention that the Board improperly ignored countervailing
evidence submitted by Col. Bader.  The Board described the evidence and arguments
made by Col. Bader before the Board in both its initial and reconsideration decisions.
AR3-11.  In particular, the AFBCMR acknowledged Col. Bader's argument that there

was not enough evidence in the record "to show abuse of office by [Col. Bader]" under 5

C.F.R. § 2635.  AR6 (initial decision); *see also* AR8 (reconsideration decision).

Likewise, the advisory opinions relied on by the AFBCMR addressed Col. Bader's

arguments and evidence.  AR264-67; AR404-14.  The General Counsel's Office advisory

opinion in particular acknowledged that Col. Bader sought ethics opinions, AR405, and

analyzed in detail Col. Bader's central contention that the Inspector General findings

were inaccurate, reviewing his interactions with military officials during his time at

GMRE to determine whether he used his public office for private gain, AR404-11.

The General Counsel's Office advisory opinion also specifically addressed the

letter from Ms. Russo.  AR407, 411.  The General Counsel's Office opined that "[w]hile

1Lt Russo subsequently clarified . . . that [Col. Bader] never affirmatively misrepresented

his status . . . or, to the best of her knowledge, contacted her on behalf of GMRE while he

was in an official duty status, a reasonable person could conclude from the lieutenant's

reaction that a 'normal' contractor would not be afforded this type of access to [Air

Force] officials during this stage of the contracting process." *Id.*  The General Counsel's

Office acknowledged that Col. Bader never expressly used his rank to coerce others to act

on his behalf or directed a government employee to take actions to benefit himself or

GMRE.  AR411.  Nevertheless, the advisory opinion concludes that "a reasonable person

could review the evidence presented in the case and conclude, as did [the Inspector

General], that [Col. Bader] engaged in behavior that blurred his [military and contractor]

statuses . . . in a manner that allowed him to implicitly use the authority associated with

his official position" to benefit himself and GMRE.[7]  *Id.*  This rationale was adopted by

the AFBCMR.  AR10-11.

Finally, the record reflects that the Board and the General Counsel's Office

considered Mr. Fox's letter when reviewing Col. Bader's reconsideration application.

AR9.  While neither the Board nor the General Counsel's Office advisory opinion

specifically discussed this letter, both concluded after reviewing Col. Bader's

submissions that his application for reconsideration should be denied.  AR9-10.  More

specifically, the General Counsel's Office concluded that "[n]othing in the record, to

include the new matters [Col. Bader] has submitted, indicates the Officer Grade

Determination action was inappropriate or the [Secretary's] decision was erroneous,

arbitrary or unjust."  AR413.  Based on this record, the court cannot conclude that the

AFBCMR ignored Mr. Fox's letter such that the Board's decisions were arbitrary or

capricious.  *See Boyer v. United States*, 323 F. App'x 917, 920 (Fed. Cir. 2009)

---

[7]  At oral argument, counsel for Col. Bader also argued that Col. Bader's conduct was "not intentional or done with any desire to gain an unfair advantage or an upper hand." Tr. at 17; *see also id.* at 23, 27.  However, as the government argues, Tr. at 16, Col. Bader's "intent" is not determinative of whether he violated § 2635, which provides that federal employees must not "appear" to violate the relevant ethical standards, determined from the "perspective of a reasonable person with knowledge of the relevant facts."  5 C.F.R. § 2635.101(b)(14).  In addition, the record reflects that the Board considered Col. Bader's arguments regarding his lack of intent, as well as evidence in the record from the Inspector General report and the advisory opinions.  *See, e.g.*, AR118-19; AR128-29 (Inspector General report describing and applying § 2635); AR408 (Office of General Counsel's advisory opinion).  As discussed *infra*, based on this record, the court concludes that the Board's decisions denying Col. Bader's applications were supported by substantial evidence.

(explaining that even where a Board does not cite certain evidence, "the evidence was in the record, [and] was presumptively considered").

In sum, after a review of the record, the court concludes that Col. Bader has failed to show that the Board improperly ignored countervailing evidence in upholding his Officer Grade Determination. To the contrary, the AFBCMR and the advisory opinions relied on by the Board provided sufficient answers to the objections raised by Col. Bader.

## 2. The AFBCMR's decisions upholding the Officer Grade Determination are supported and reasonable.

In addition, to the extent Col. Bader is arguing that the Board's decisions upholding his Officer Grade Determination are arbitrary, capricious, or not based on substantial evidence, the court disagrees. As the government argues, *see* Def.'s Resp. & Cross-Mot. at 22-25, there is evidence in the record that undermines Col. Bader's assertions that the Inspector General report's findings are erroneous. For example, as explained by the General Counsel's Office advisory opinion discussing, in detail, the Inspector General report, AR409-411, Col. Bader "sent numerous emails to [Air Force] representatives [junior to Col. Bader] . . . in which he politely directed them to adopt his prepared 'cutline' text as their own and email other [Air Force] officials requesting information or actions in support of GMRE government contracts." The advisory opinion also explains that Col. Bader's communications and access to Air Force officials resulted in an approximately $1.4 million contract for GMRE. AR410. This and other evidence of Col. Bader's conduct in the record supports the conclusion that Col. Bader "blurred lines of authority in advancing GMRE's interests." AR409-10.

Moreover, Col. Bader conceded in response to the Inspector General report that he violated § 207(c)'s "cooling off" requirements.  AR136.  Given this concession, the substantiated Inspector General report regarding Col. Bader's misconduct, the advisory opinions obtained by the AFBCMR, and the discretion granted to the Secretary in making officer grade determinations, the court concludes that the AFBCMR's decisions upholding Col. Bader's Officer Grade Determination are reasonable and supported by substantial evidence.

At oral argument, Col. Bader's counsel suggested that the court reweigh the evidence in the record, Tr. at 21, to evaluate whether "the punishment that was meted out" – his retirement grade reduction – "outweighs what Colonel Bader . . . was even alleged to have done."  Tr. at 21; *see also* Pl.'s Resp. & Reply at 5 (arguing that Col. Bader's "specific punishment was [not] appropriately tailored to the specific ethical violation" he committed, and, therefore, the "AFBCMR committed an injustice by not correcting his record").  As discussed above, to the extent Col. Bader asks this court to review the merits of his Officer Grade Determination, the court may not do so.  *See Murphy*, 993 F.2d at 874 (holding that in reviewing decisions of the military, the "invocation of the rubric 'injustice' provides no basis for judicial relief").

Moreover, when reviewing the AFBCMR's decisions under the arbitrary and capricious standard of review, the court does not "reweigh[] . . . the evidence," *Heisig*, 719 F.2d at 1157, and must defer to the credibility determinations made by the Board, *see Emoto*, 2017 WL 5167383, at *13.  In this case, it was reasonable for the Board to conclude, based on the evidence in the record, that Col. Bader did not demonstrate an

error or injustice in the Officer Grade Determination decision based on the substantiated Inspector General report, despite his arguments that he never used his office for private gain, that he sought to comply with the ethics rules, and that the decision to reduce his rank was unwarranted.

The court acknowledges that Col. Bader strongly disagrees with the AFBCMR's failure to find that Col. Bader was treated unjustly.  However, his disagreement with the Board's decisions is insufficient to demonstrate by "cogent and clearly convincing evidence," *Wronke*, 787 F.2d at 1576 (internal quotation omitted), that the decisions are arbitrary, capricious, or unsupported by substantial evidence.  Col. Bader does not identify any precedent in his briefs that would support a different result.  Here, the AFBCMR concluded that the Secretary of the Air Force's Officer Grade Determination for Col. Bader was not erroneous and did not rise to the level of injustice.  After a review of the record, the court finds that the AFBCMR decisions are supported and reasonable.

### 3.    The AFBCMR adequately explained its decisions.

Col. Bader next argues that the AFBCMR's decisions are arbitrary and capricious because they "rubber stamp[ed]" the advisory opinions obtained during the Board's proceedings without adequate explanation.  Pl.'s Mot. at 13; Am. Compl. ¶ 60.  The court again disagrees with Col. Bader.

In accordance with its own regulations, the AFBCMR must determine "in writing" whether an "applicant has demonstrated the existence of a material error or injustice."  32 C.F.R. § 865.4(h)(4).  In doing so, this court has explained that correction boards must examine relevant data and articulate a satisfactory explanation for their decisions.  *See,*

*e.g.*, *Gregory v. United States*, 151 Fed. Cl. 209, 237-38 (2020) (citing cases).  While an explanation need not be set forth in "great detail," the "analytical path" must be reasonably discernable, *Volk v. United States*, 111 Fed. Cl. 313, 334 (2013) (internal quotations and citations omitted); *Sokol v. United States*, 120 Fed. Cl. 144, 151 (2015); *Peoples v. United States*, 87 Fed. Cl. 553, 576 (2009), and the Board must support its decision "with a reasoned explanation of an important issue," *Gregory*, 151 Fed. Cl. at 238 (internal quotation omitted), in a way that permits an applicant to "rebut [the Board's] action," *Peoples*, 87 Fed. Cl. at 553 (internal quotation omitted); *see also Boyer*, 323 F. App'x at 920 (explaining that "in military administrative decisions, the reasons need not be expressed in great detail" (internal quotation and alteration omitted)).

The court concludes that the AFBCMR has articulated an adequate explanation in this case in both is initial and reconsideration opinions.  Starting with the initial decision, the Board, after reviewing Col. Bader's evidence and arguments, as well as the advisory opinions from the National Guard Bureau and the Personnel Council, "agree[d] with the opinion and recommendation of [the National Guard Bureau and the Personnel Council], and adopt[ed] their rationale as the basis for [its] conclusion that the applicant has not been the victim of an error o[r] injustice."  AR6.

In this written opinion, the Board described Col. Bader's arguments and both advisory opinions.  AR3-6.  The National Guard Bureau's advisory opinion recommended denying Col. Bader's application based on the substantiated Inspector General findings.  AR5.  The Personnel Council advisory opinion recommended denying Col. Bader's application because Col. Bader failed to show that the Officer Grade

Determination was "erroneous, arbitrary, or unjust," because there "were no procedural errors in the [Officer Grade Determination] process," and because the Secretary of the Air Force "has wide discretion in making her determinations of satisfactory or unsatisfactory service and appropriately exercised her discretion in this case." *Id.*

The advisory opinions relied on by the Board responded to the information and arguments made in Col. Bader's application.  Specifically, the Personnel Council found that Col. Bader's submissions to the AFBCMR did "not undermine the factual or rational basis of the decisions made throughout the [Officer Grade Determination] process, nor does it demonstrate that [Col. Bader] suffered an injustice."  AR266.  The Personnel Council explained that none of the information provided by Col. Bader to the AFBCMR was "new" or "indicative of innocence."  *Id.*  The Personnel Council went on to explain that, contrary to Col. Bader's arguments before the Board, the decision to terminate debarment proceedings against Col. Bader was not "exculpatory."  *Id.*  The Personnel Council also noted that the character letters submitted by Col. Bader to the Board could have been submitted during the Officer Grade Determination process but were not, and that these letters "did not provide any new or significant insight into the facts surrounding [Col. Bader's ethical] misconduct."  AR267.

The Board's decision on reconsideration contains a similar analysis.  After describing Col. Bader's submissions and the General Counsel's Office advisory opinion, the AFBCMR denied Col. Bader's reconsideration application.  It concluded that "the Board remains unconvinced the evidence presented demonstrates an error or injustice. The Board concurs with the rationale and recommendation of [the General Counsel's

Office] and finds a preponderance of the evidence does not substantiate [Col. Bader's] contentions.  Specifically, no new evidence presented rose to the level warranting this Board to overturn a thorough and valid [Inspector General] investigation, nor the decisions from senior . . . officials regarding [Col. Bader's] letter of reprimand and subsequent officer grade determination."  AR10-11.

The General Counsel's Office advisory opinion relied on by the Board contains a review of Col. Bader's arguments on reconsideration, including his challenges to the underlying Inspector General report.  AR404-14.  Yet, the General Counsel's Office concluded that the Inspector General report "did not err in determining [Col. Bader] misused his official position and authority for personal gain and has found insufficient basis to conclude the Secretary of the Air Force's decision to direct [Col. Bader] be retired in the lower rank [of colonel] was unjust."  AR404.  In so concluding, the General Counsel's Office analyzed in detail the applicable facts and law, the Inspector General's investigation, and Col. Bader's arguments before the Board.  AR404-14.

In reviewing the Board's decisions and the record, the court concludes that Col. Bader has failed to show that the AFBCMR's decisions are inadequately explained. While those decisions do rely on various advisory opinions, the advisory opinions themselves provide a discussion of the evidence in the record and the arguments submitted by Col. Bader.  The AFBCMR was entitled to rely on these advisory opinions in drawing its conclusions, 32 C.F.R. § 865.4(a)(1), and the court finds that the AFBCMR, relying on these opinions, adequately explained the basis and rationale for its

decisions, *see Volk*, 111 Fed. Cl. at 334 (upholding a Navy corrections board decision relying on an advisory opinion).

For these reasons, the court finds that the AFBCMR adequately explained its denials of Col. Bader's applications.  Col. Bader's argument to the contrary cannot serve as a basis for overturning the AFBCMR's decisions.

### 4.    Col. Bader has not shown how the AFBCMR violated his due process rights.

Col. Bader next contends that the AFBCMR violated his due process rights.[8]  Pl.'s Mot. at 14-15; Am. Compl. ¶ 60.  However, the court agrees with the government that even if Col. Bader possesses a liberty or property interest in his rank, he has not shown that he was deprived of that rank without due process.  "[D]ue process rights are typically fulfilled by notice of the government act and an opportunity to respond before or after the act." *Flowers v. United* States, 80 Fed. Cl. 210, 224 (2008) (quotation omitted).  The record demonstrates that Col. Bader was given ample notice and the opportunity be heard on multiple occasions.  Specifically, Col. Bader had the opportunity and did respond to (1) the letter of reprimand based on the Inspector General investigation, AR136; (2) the proposed Officer Grade Determination decision, AR177; and (3) the AFBCMR

---

[8] As stated above, the Court of Federal Claims lacks jurisdiction over claims alleging violations of the Due Process Clause because that clause is not a money-mandating provision.  *See, e.g.*, *LeBlanc*, 50 F.3d at 1028.  However, when a constitutional issue arises not as a standalone claim but as a factor to a claim properly brought under the Tucker Act, the court may exercise jurisdiction.  *See Holley v. United States*, 124 F.3d 1462, 1466 (Fed. Cir. 1997) ("The presence of a constitutional issue does not erase the jurisdiction of the Court of Federal Claims based on a properly brought claim under the Tucker Act, or bar the court from considering the constitutional issue in the course of determining whether the discharge was wrongful.").

proceedings, where Col. Bader submitted briefs, supporting exhibits, and rebuttals to the advisory opinions obtained by the Board, AR18-263; AR269-363: AR376-92.  In view of the foregoing, Col. Bader's claim that he was deprived of due process fails.

Col. Bader also argues that his substantive due process rights were violated because the decision to reduce his rank was "unjust."  Pl.'s Mot. at 8, 15.  In support, Col. Bader argues that the Officer Grade Determination was "egregious," "outrageous," and "shocks the conscious" because it was made in "bad faith" and was "arbitrary [and] capricious."  *Id.* at 14-15 (quotation omitted).  Col. Bader points to no evidence in the record of bad faith on the part of the Air Force.  While Col. Bader clearly disagrees with the AFBCMR's decisions, he has not shown on this record that they are arbitrary or capricious or unsupported by substantial evidence.

> **5.    Col. Bader incorrectly argues that the AFBCMR's decisions should not be evaluated under the arbitrary and capricious standard of review.**

Finally, Col. Bader argues that the "AFBCMR has not entitled itself to Chevron-type deference in this case."  Pl.'s Resp. & Reply at 5.  Col. Bader seems be arguing that because the AFBCMR "acted in bad faith, . . . wholly disregarded the relevant evidence, and . . . failed to articulate a satisfactory explanation for its decision," the court should not apply the deferential arbitrary and capricious standard of review applicable to AFBCMR decisions.  *Id.*  However, it is well-settled that this standard of review applies here.  *See, e.g.*, *Chappell*, 462 U.S. at 303; *Barnick*, 591 F.3d at 1377.  As discussed above, the court disagrees with Col. Bader that the AFBCMR disregarded evidence or failed to articulate an adequate explanation for its decision.  And Col. Bader has offered

no evidence that the AFBCMR acted in bad faith that would overcome the presumption of regularity afforded to AFBCMR decisions. *Richey*, 322 F.3d at 1326. This argument therefore cannot serve as a basis to overturn the AFBCMR's decisions upholding the Officer Grade Determination.

In sum, Col. Bader has not shown that the AFBCMR's decisions were arbitrary, capricious, unsupported by substantial evidence, or contrary to law. The court therefore grants the government's cross motion for judgment on the administrative record, and denies Col. Bader's motion for judgment on the administrative record.

## IV.    CONCLUSION

For the foregoing reasons, the government's motion to dismiss, ECF No. 13, is **GRANTED IN PART** and **DENIED IN PART**. Col. Bader's motion for judgment on the administrative record, ECF No. 9, is **DENIED**. The government's cross motion for judgment on the administrative record, ECF No. 13, is **GRANTED**. For docket clarity, the Clerk is directed to **STRIKE** the response docketed at ECF No. 12, which was re-docketed at ECF No. 13 to correct a filing error. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED**.

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge
